HAWTHORNE, Justice.
 

 Defendants, Jacob D. Murff, Joseph J1 Anders, Jr., Marshall K. Bruce, and J. C. Deason, Sr., were convicted by a jury of attempted aggravated criminal damage to property, and were sentenced by the court to 18 months at hard labor in the state penitentiary. From these convictions and sentences they have appealed.
 

 For a proper understanding of the various bills of exception taken in this matter, it is necessary that we give a short resumé of the facts as gathered by us from the trial judge’s per curiams, certain other portions of the record itself, and briefs filed by counsel. There does not seem to be any dispute as to these facts, and the trial judge informs us in one of his per curiams that each of the defendants made a full and complete statement or confession as to his participation in the series of -et ents which resulted in the charge of the crime of attempted aggravated criminal damage to property.
 

 The four defendants resided in Caddo Parish, Louisiana. On the night of July 7, 1948, they went into DeSoto Parish for the purpose of damaging a passenger auto-bus owned and operated by Southern Bus Lines, Inc., their former employer and a public carrier. The bus traveled each night upon a regular schedule, and on the night in question was travelling from Shreveport south on Highway 171.
 

 The defendants brought with them 36 mowing machine blades, some three or four inches long, each of which had been pre-sharpened to a point, and welded at its base to a flat piece of metal to hold it upright when placed upon the pavement. Three metal rods, approximately three feet long, had been specially constructed to hold 12 blades each and, when placed on the highway, would cover one entire side of the 18-foot paved surface. Defendants intended to place these blades in the high-' way so as to, cut the tires of the bus, causing them to go flat, and causing the bus to go out of control.
 

 The defendants had arrived with the blades and the rods at the place along the highway where they intended to effect their purpose a short time before the bus was due to arrive, and were waiting for it to come along so that they could carry out their plan. They had arranged a system of signals to assure the identification of the particular bus.......
 

 
 *47
 
 The crime was never completed because a farmer detected the presence of one of the defendants near his home, and, becoming alarmed at his actions, began shooting. This defendant immediately fled, and the others, hearing the shooting, did likewise. All four were apprehended and brought to trial.
 

 Bill of Exception No. 1 concerns a ruling of the trial judge in regard to the bond forfeitures in this case.
 

 The defendants failed to appear for arraignment on October 14, 1948, and their bonds, over their counsel’s objection, were ordered forfeited on motion of the district attorney. Thereafter, on October 18, the defendants through counsel appeared in open court, and in behalf of each defendant a demurrer and motion to quash and a motion for a bill of particulars were filed, and counsel again moved that the bond forfeitures be set aside. Upon objection of the State, this last motion was overruled. Counsel for defendants then stated that they were ready to plead to the indictment, subject to the ruling on the demurrer and the motion for a bill of particulars previously filed. After the court had acted upon the motion to quash and the motion for a bill of particulars, the defendants waived formal arraignment and entered pleas of not guilty, and the case without objection was fixed for trial for October 22, 1948. On October 22, after the attorneys for both the State and the defendants had announced themselves ready for trial and the case was called, counsel for defendants again moved that the bond forfeitures be set aside. This motion was. taken under advisement by the court. After trial, conviction, and sentence of the defendants, upon motion of the district attorney the bond forfeitures were set aside.
 

 Bill of Exception No. 1 was taken to the-overruling by the trial judge of defendants’ motions to set aside the bond forfeitures, which had been previously entered against all of them.
 

 The trial judge in his per curiam sets-forth that he knew of no law which required the court under the circumstances to set aside a forfeiture of these bonds; that the law applicable is Article 108 of the Louisiana Code of Criminal Procedure, the pertinent portion of which reads as follows: “Any judgment forfeiting an appearance bond rendered under the provisions of this article may, at any time within five days after rendition, be set aside upon the appearance, and trial and conviction or acquittal of the defendant, or upon a continuance granted upon motion of the district attorney after such appearance.” The judge then states that none of these conditions was complied with, and that the question had become moot, as the forfeitures had been set aside upon motion of the district attorney.
 

 Counsel for defendants contend that the trial judge erred in his denial of their motions to set aside the forfeitures, and that this denial, in the presence of the jury,
 
 *49
 
 prejudiced these defendants because it was •equivalent to a charge of fleeing from justice.
 

 It is unnecessary for us to decide whether the trial judge erred in his denial of the motions, for after trial, as pointed out hereinabove, the forfeiture of these •appearance bonds was set aside upon motion of the district attorney. Furthermore, on October 18 the case was fixed for trial for October 22 without objection, and on that latter date no objection was made to proceeding with the trial. Counsel themselves, for the first time in the presence of the jury, on that date moved that the forfeitures be set aside, and the trial judge did not deny this motion at that time but merely took it under advisement.
 

 We cannot agree that the judge’s denial of the motion was tantamount to a charge to the jury that the accused were fugitives from justice. Furthermore, counsel have not pointed out, nor do we know of, any legal rights of which these accused were deprived on the trial of the case on its merits before the jury by the trial judge’s rulings with reference to these bond forfeitures, and we do not think that defendants were in any manner prejudiced by such rulings.
 

 The indictment in this case charges that the defendants “ * * * on or about the 7th day of July in the year of our Lord One Thousand Nine Hundred •and Forty-eight at and in the Parish, District and State aforesaid: having a specific intent to commit a crime, did lie in wait with dangerous weapons and in-strumentalities, to-wit: mowing machine blades, in the night time, on Highway 171 between Mansfield and Benson, in DeSoto Parish, Louisiana, for the purpose of and ■tending directly toward the intentional damaging of a passenger auto-bus occupied by several persons and owned and being operated by Southern Bus Lines, Inc., wherein it was foreseeable that human life might be endangered * *
 

 To this indictment the defendants filed a •demurrer and motion to quash, which was overruled, and Bill of Exception No. 2 was reserved.
 

 In brief filed in this court counsel state that criminal attempt is a separate but lesser grade of the intended crime, and that the necessary specific intent must be to commit that particular offense; that the indictment in this case charges defendants with reference to intent as “ * * * having a specific intent to commit a crime * * * ”; that, since the indictment does not charge any specific intent to commit the crime of aggravated criminal damage to property or to commit any other specific substantive crime, it is invalid.
 

 There is no merit in this contention. The specific intent charged in the indictment is to commit the crime of aggravated criminal damage to property, and the substantive offense is set forth in the indictment in the language of the statute defining it. A reading of the pertinent portions of
 
 *51
 
 the indictment shows that it charges that these defendants, having a specific intent to commit a crime, did lie in wait with dangerous weapons and instrumentalities
 
 for the purpose of and tending directly toward the intentional damaging of an auto-bus.
 
 We consider this indictment sufficient to charge a specific intent to commit the substantive crime which defendants were charged with attempting, and that any other interpretation would be a strained one.
 

 Counsel next call our attention to the definition of “dangerous weapon” found in Article 2 of our Criminal Code, as follows: “ ‘Dangerous weapon’ includes any .gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.”
 

 They then state that mowing machine blades are not inherently dangerous, and that nothing in the indictment alleges their use in any manner; that, unless the indictment alleges that the so called dangerdus weapons were used in some manner calculated or likely to produce death or great bodily harm, it has failed to charge any crime under the criminal attempt statute, and that, for the indictment to come within the provisions of the statute, an allegation of the manner of use of the mowing machine blades is necessary and essential.
 

 In the instant case the indictment is drawn in the language of Articles
 
 27
 
 and 55 of the Criminal Code, and charges every necessary element or ingredient of the crime of attempted aggravated crim- • inal damage to property.
 

 Article 27 of the Criminal Code defines “attempt” as follows:
 

 “Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 “Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a -crime, shall be sufficient to constitute an attempt to commit' the offense intended.”
 

 Article 55 of the Louisiana Criminal Code reads:
 

 “Aggravated criminal damage to property is the intentional damaging of any structure, water-craft, or movable, wherein it is foreseeable that human life might be-endangered, by any means other than fire, or explosion. * * * ”
 

 As pointed out in the comment to-Article 27, the elements of an attempt are a specific intent to commit a particular crime and an overt act done for the purpose of and tending directly toward the
 
 *53
 
 accomplishment of the object. The article points out that mere preparation to commit a crime is not sufficient to constitute an attempt, but' the article makes it clear that lying in wait with a dangerous weapon with the intent to commit a crime and searching for the intended victim with a -dangerous weapon with the intent to commit a crime are in themselves overt acts, especially recognized by the statute, and shall be sufficient to constitute an attempt to commit the offense intended.
 

 The indictment in this case charges specific intent to commit the substantive offense intended, and further charges an overt act, specifically recognized by the statute to be such, that is, lying in wait with a dangerous weapon, and it fully meets the test which this court has said is necessary to determine the sufficiency of an indictment or information, that is:
 

 “1. Is the indictment or information sufficient to inform the court what offense is being charged in order that the court might properly regulate the evidence sought to be introduced?
 

 “2. Does the indictment or information inform the accused of the nature and cause ■of the offense with which he is being charged ?
 

 “3. Is the indictment sufficient on its face to support a plea of former jeopardy in event there is an attempt to try the defendant more than once for the same offense?” State v. Ward, 208 La. 56, 22 So.2d 740, 741.
 

 In State v. Humphries, 35 La.Ann. 966, the contention was made that the omission from the indictment of the statutory words
 
 "with a dangercms weapon”
 
 was of such moment as to be fatal. In holding the indictment to be valid because the defendant was charged with “shooting”, which necessarily implies the use of a dangerous weapon, the court in that case made the 'following observation, which rve think is pertinent and applicable here:
 

 “Niceties in judicial construction of criminal statutes, such as that urged upon us here, were deplored by Lord Hale more than two centuries ago when he wisely and feelingly said, ‘that the strictness required in indictment's had grown to be a blemish and inconvenience in the law and the administration thereof; and that more offenders escape by the over easy ear given to exceptions to indictments than by the manifestation of their innocence, and that the greatest crimes had gone unpunished by reason of these unseemly niceties.’ ”
 

 The members of the commission appointed to frame our Code of Criminal Procedure were apparently of the same view as Lord Hale with reference to the construction of criminal statutes and the strictness required of an indictment, as reflected by Article 227 of that Code, which was adopted by the Legislature.
 

 This article is set out and an excellent discussion thereof is found in the case of State v. Dark et al., 195 La. 139, 196 So.
 
 *55
 
 47, 52. In that case it was held that an indictment is sufficient if it charges the offense in the language of the statute when the statute creating the offense sets out the facts constituting it. We quote from the opinion in that case as- follows: “ ‘The indictment must state
 
 every fact and circumstance necessary to constitute the offense,
 
 but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used.’ Article 227, Code of Criminal Procedure. ‘It is sufficient to follow the words of the statute, when those words describe the acts constituting the offense with such precision and certainty as to fully inform defendant as to the
 
 nature
 
 of the charge against which he is to prepare his defense, and to furnish him a complete plea of autrefois acquit or convict, in bar of another indictment.
 
 When a statute creating an offense sets out the facts constituting it, it suffices to charge the offense in the language of the statute,
 
 but the use of the identical words is not sacramental, but sufficient, since any words may be used that will unequivocally convey the meaning of the statute, so that defendant cannot be misled as to the charge he is to answer,
 
 the test being, was defendant fully informed of the crime with which he was charged, for nothing can be taken by intendment!
 
 1 Marr’s Criminal Jurisprudence 483, Section 325. If ‘ * * * the indictment is couched in the language of the statute, it is sufficient and sets forth a crime denounced by our laws.’ State v. Newton, 166 La. 297, 117 So. 231, 232. (Italics ours.)” See also State v. Sonier, 107 La. 794, 32 So. 175; State v. Kilshaw, 158 La. 203, 103 So. 740; State v. Goldstein, 187 La. 353, 174 So. 873; State v. Clark, 208 La. 1047, 24 So.2d 72.
 

 Counsel contend, however, that this indictment should have been amplified to allege the use of the instrumentalities named as the dangerous weapons therein.
 

 A somewhat similar pro-blejn has been before this court on various occasions in the past. For instance, in the case of State v. Beebe et al., 127 La. 493, 53 So. 730, it was contended that, since the indictment did not describe or name the weapon alleged to be a dangerous weapon, it was fatally defective. We quote the following-from that case:
 

 “Defendant, charged with cutting and wounding with a dangerous weapon, with ‘the felonious intent * * * to kill and murder,’ moved to quash the indictment, on the ground that ‘it does not allege the-kind and character, name and description of the dangerous weapon with which the alleged assault was committed,’ and, the motion having been denied, he reserved a bill.
 

 “The indictment was framed under Rev. St. § 791, as amended by Act No. 43 of 1890, which reads (in part) :
 

 “ ‘Whoever shall cut * * * any person
 
 with a dangerous weapon,
 
 with intent
 
 *57
 
 to commit murder * * * shall, on con-viqtion, suffer imprisonment, at hard labor, or otherwise, for not less than one, nor more than twenty-one years.’
 

 "The charge is in the language of the statute, and, we think, is sufficient.
 
 * *
 
 *»
 

 In that case this court pointed out that any instrumentality might be a dangerous weapon, depending upon the use made of it, and that that question was one for the jury to determine, but that it was unnecessary to amplify the indictment to show the name, character, etc., of the weapon used.
 

 In State v. Scott, 39 La.Ann. 943, 3 So. 83, 84, the contention was made that the indictment charging wounding less than mayhem was defective because the weapon named therein, a pocket knife, was not a dangerous weapon. In disposing of this contention this court said:
 

 “It may well be that the accused could not, under section 932, Rev.St., have been convicted for carrying a dangerous weapon concealed on or about his person, because a pocket-knife is not, eo nomine, a dangerous weapon; hut
 
 it does not follow, that
 
 when, under section 794, Rev. St., the charge is that the accused did with such a knife feloniously inflict a severe wound, less than mayhem,
 
 such weapon may not be considered by the court and jury as a dangerous zveapon, by the use made of it, within the meaning of that section, particularly as the description of the weapon is not necessarily "required by the statute, which merely mentions a dangerous weapon,
 
 i. e., any dangerous weapon, which may be so by its use or in itself.”'
 

 In State v. Brown, 41 La.Ann. 345, 6 So. 541, the information charged that the defendant “did wantonly and maliciously, with a dangerous weapon, to-wit, a knife,, feloniously inflict a wound less than mayhem”. In that case, as well as in State v. Scott, supra, the defendant was charged under Revised Statutes, § 794, which made it an offense for any one unlawfully and maliciously
 
 with a dangerous weapon
 
 to inflict a wound less than mayhem upon another person. The statute there, as well as the attempt statute here under consideration, did not describe any particular kind of weapon as dangerous. In affirming the conviction in the Brown case, this court in the course of its opinion said:
 

 “ * * *
 
 The statude does not describe any particular kind of weapon as dangerous, and the character of the zveapon is a fact to be determined by the jury.
 
 * * *
 

 “The grievance of the offense in them [the statutes] is the inflicting of the wound less than mayhem; the stabbing, cutting, and thrusting; and it may be
 
 zvell
 
 left to the jury to determine the dangerous character of the weapon with which the wound is inflicted.”
 

 In State v. Stewart et al., 117 La. 476, 41 So. 798, 802, the accused was charged in a bill of indictment with having cut
 
 zmth
 
 
 *59
 

 •a dangerous weapon
 
 with intent to murder. In answer to one 'of the contentions raised therein, this court said:
 

 “The complaint of appellant that the ■court should [not] have permitted the witness Caffery to prove that the instrument with which he was cut was a razor, ■over his objection that such testimony was inadmissible under the recitals of the indictment which did not describe the character of the weapon used, is not well founded. Objection of no kind had been made to the indictment. When the case went to trial the evidence was admissible to show the cutting; whether the weapon used was a dangerous one was for the jury to determine. The indictment followed the language of the statute. The weapon used was not named, but the cutting was alleged to have been done ‘with ■a dangerous weapon.’ * * * ”
 

 When the cases cited above were de--■cided, the definition of a “dangerous weapon” was found in the jurisprudence, whereas now the same definition, broadened to include gas, liquid, or other substance or instrumentality, is found in Article 2 of the Criminal Code. Moreover, in none of those cases was the contention made that the manner of use had to he recited in the' indictment. In those cases it was held that it was not necessary to
 
 name the weapon
 
 itself in the indictment, that the words “with a dangerous weapon” were sufficient, and that the question of whether the instrumentality used was a dangerous weapon was dependent upon the use made of it and was a question for the jury to determine. But we consider the reasoning in ■those cases decisive of the issue here, so that, in the instant case, it is unnecessary for the indictment to allege the manner of use of the weapons.'
 

 The question of whether these instrumentalities were in fact dangerous weapons was a question for determination by the jury on the trial of the case on its merits, and is not properly presented by means of a demurrer or motion to quash.
 

 ^ A thorough analysis of appellants’ brief show's that what they are really urging upon this court is that a weapon not inherently dangerous cannot be a dangerous weapon under the lying in wait provision unless it has been used, when they contend that, if the weapons or instrumentalities named in the indictment, which are not in themselves inherently dangerous, have not been alleged to have been used, the charge then does not come within the lying in wait provision of the attempt article. The basis for this argument is the words “in the manner used” in the definition of dangerous weapons in Article 2 of the Code.
 

 Bearing in mind Article 3 of the Criminal Code, which declares that all provisions of the Code shall be given a genuine construction according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purposes of the provisions,
 
 *61
 
 let us now examine Articles 2 and 27 insofar as they define “dangerous weapon” and provide that lying in wait with a dangerous weapon is sufficient to constitute an attempt, in order to ascertain whether they indicate any intention on the part of the lawmakers to attach to the words “in the manner used” the significance attached to them by counsel for defendants.
 

 The purpose of the provision in Article 27 relative to lying in wait' is fully explained in the comment appearing after the article. The redactors of the Code considered that such conduct was sufficient to constitute an act beyond mere preparation, and, to prevent the confusion as to this matter which, as pointed out in the comments, exists in other jurisdictions, a provision was specifically inserted in the definition of the crime of attempt to make lying in wait with a dangerous weapon an act beyond mere preparation. A fair import of the words found in Paragraph 2 of Article 27, taken in their usual sense, in connection with the context, shows that the framers of the Code had in mind distinguishing mere preparation from lying in wait with a dangerous weapon, but there is nothing to indicate that they intended by the above provision t'o distinguish lying in wait with a weapon which is inherently dangerous, or which has been used in a manner calculated or likely to produce death or great bodily harm, from lying in wait with a weapon which is just as dangerous potentially by virtue of the use which the one lying in wait intends to make of it.
 

 Can such a distinction be made by reading the definition of “dangerous weapon”' in Article 2 in connection with the lying in wait provision in Article 27? Again,, here the reading of the comment'to the article shows the purpose of the provision.. Dangerous weapons were defined so that a very broad meaning would be given to-the term, and so that no thing could be rejected as a dangerous weapon because of its substance or quality. If counsel’s-construction of this definition in Article 2, which contains the words “in the manner used”, were -correct, a serious question would be presented to this -court. We are of the -opinion that to place such great emphasis on those words in the definition, would, in effect, be saying that an indictment -charging lying in wait with an inherently . dangerous weapon without stating that the weapon was used would not charge an offense, and would be invalid under Article 27, -because, under a strict interpretation of the definition contained in Article 2, no instrumentality would be dangerous until used. Such a construction would defeat the purpose and intent of the provisions of Article 27 relative to lying in wait, and would, in effect, write them out of the Code. This is true from the practical viewpoint -because, if a weapon has been used, the State would not be relegated to charging attempt under the lying in wait provision, for an act beyond lying in wait would have been committed.
 

 
 *63
 
 . We conclude, therefore, that for the purpose of the lying in wait provision of the attempt article an instrumentality, etc., may be a dangerous weapon if the one lying in wait intends to use it in a manner calculated or likely to produce death or great bodily harm.
 

 For the purpose of clarity, let us restate that the statutes creating the offense charged set out the facts constituting it— that is, (1) the specific intent of any person, (2) while lying in wait with a dangerous weapon, (3) intentionally to damage a movable, (4) wherein it is foreseeable that human life might be endangered. The indictment in the instant case, being drawn in the language of the statutes, states every fact and circumstance to constitute the offense, and fully meets the test as to sufficiency laid down by this court in State v. Ward, supra.
 

 Under the established jurisprudence of this court, as shown by the cases cited and discussed hereinabove, which we think are decisive, it is necessary only for the indictment here to use the words “with dangerous weapons”, and the name of the weapons themselves could have been omitted. In case of such omission, the defendant could always, if necessary for his defense, ask for, and obtain, the nature of the weapons by means of a bill of particulars.
 

 The question, therefore, of whether the instrumentalities designated in the indictment as dangerous weapons were actually dangerous weapons was a question of fact for the determination of the jury on the trial of the case on its merits according to whether the manner of their use or intended use was calculated to produce death or great bodily harm, and was not properly presented here by means of the demurrer or motion to quash.
 

 Prior to arraignment, counsel for all defendants filed a motion for a bill of particulars, in which among other things they requested that the State inform them what passenger auto-bus was referred to in the indictment, what persons occupied it, and what human life or lives it was foreseeable were endangered. . In answer to this motion for a bill of particulars, the State set forth, among other things, that the bus referred to in the bill of indictment was owned and being operated by the Southern Bus Lines, Inc., and was being driven south on Highway No. 171, its terminal destination being unknown to the State; that the bus was scheduled to leave Mansfield at approximately 9:10 p. m. on the date alleged in the bill of indictment; that the persons whose lives might be endangered were several persons who were riding in the bus and the driver of the bus, whose names were unknown to the State.
 

 Counsel for defendants objected to the sufficiency of the State’s answer for the reason that the position of the bus had not been definitely located therein. This objection was overruled by the court, and Bill of Exception No. 3 was reserved.
 

 
 *65
 
 The trial judge in his per curiam states that it would have been impossible for the State to give a definite location of the bus, which was operating on schedule, at the time these defendants took their respective positions on the highway shortly before the bus was to come along.
 

 We do not think that' a definite and fixed location of the bus at the time these defendants were stationed along the highway awaiting its arrival constituted an essential particular for the preparation of the defense in this case, and consequently in our opinion the trial judge did not abuse his discretion in overruling the objection. Furthermore, a reading of the motion for a bill of particulars discloses that no request was made therein by the defendants to fix definitely the location of the bus in question.
 

 Bills of Exception Nos. 4 and 5 were taken to the overruling of defense counsel’s objections to questions propounded by the district attorney to two State’s witnesses.
 

 Bill No. 4 does not have attached thereto the question'objected to, its answer, or the court’s ruling on the objection. The trial judge’s per curiam informs us that the witness was asked whether he had seen a man at the scene of the crime and had shot at him as he ran away; that the question propounded was material, relevant, and proper in view of the evidence which had preceded-the propounding of .the question, and that one of the defendants subsequently admitted that he was the man who was present at the scene and had run away when this witness shot at him.
 

 Article 500 of the Louisiana Code of Criminal Procedure provides that the bill of exception must show' the circumstances under which, and the evidence upon which, the ruling complained of is based, and, since the note of evidence is not attached to this bill, we are not in a position to say that the lower court erred in its ruling.
 

 Bill No. 5 was reserved in connection with a question propounded by the district attorney to Hugh Bennett, a State’s witness, on re-direct examination. This question was: “Mr. Bennett, in answering the question asked you by defense counsel, why written statements were not taken down and filed in this case, I ask you what sort of statements you are referring to in your answer to his question?”
 

 Counsel for defendant objected to this question on the ground that it was leading, and suggested to the court that no such question had been propounded to the witness on cross-examination. This objection was overruled, a bill was reserved, and the district attorney then elicited the following testimony: “By Mr. Bennett: A. You want to know what I meant by statements being taken down?
 

 “Q. Yes, in your answer to him [defense counsel], what were you referring to? A. What I was referring to, some of the officers wrote down the names and
 
 *67
 
 what might have been said when they were acknowledging to being on the highway and what they were there for.”
 

 Article 377 of the Code' of Criminal Procedure provides that the re-direct examination must be confined to the subject' matter of the cross-examination and to the explanation of statements elicited on cross-examination, but that the application of this rule is within the discretion of the trial judge. In propounding these questions the district attorney in the present case was seeking explanations of statements elicited from the witness by defense counsel on cross-examination, and the questions were entirely 'proper.
 

 Bills Nos. 6 and 7 were taken to the overruling by the trial judge of a motion in arrest of judgment and a motion for a n.ew trial. These two bills simply reurge contentions which we have already discussed and answered herein, and present nothing further for our consideration.
 

 The convictions and sentences appealed from are affirmed.
 

 HAMITER, J., dissents from refusal to grant a rehearing.
 

 O’NIELL, C. J., does not take part.