367 So.2d 824 (1979)
STATE of Louisiana, Appellee,
v.
Abraham BONIER, Jr., Appellant.
No. 62952.
Supreme Court of Louisiana.
January 29, 1979.
Rehearing Denied March 5, 1979.
*825 Donald M. Garrett, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Edward E. Roberts, Jr., Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.[*]
The defendant Bonier was convicted of armed robbery, La.R.S. 14:64, and sentenced to fifty years' imprisonment at hard labor. Upon his appeal, he relies upon two assignments of error. Both are based upon the trial court's interruption of his counsel's closing argument.
The interruption allegedly constituted a comment upon the evidence in violation of La.C.Cr.P. art. 772 (Assignment 1), which caused prejudice not cured by any admonition, that thus entitled the accused to a mistrial, La.C.Cr.P. art. 771 (Assignment 2).
The essential issue involves whether the trial court improperly indicated that the (possibly) unloaded pistol used in the robbery is a "dangerous weapon" as a matter of law, rather than leaving such factual determination to the trial jury.
Context Facts
The interruption occurred when counsel was arguing that there was no proof that the .22 caliber pistol used in the robbery was loaded and thus was not a dangerous weapon.
The trial court interrupted counsel, stating "* * * that is not the law and I will not permit you to argue that to the jury." The defendant's lawyer replied, "Well, your honor, I think I am entitled to argue whether this was a dangerous weapon, in the manner it was used."
The court stated: "I have instructed you, sir, and you will drop the subject matter." After counsel once again replied as to his responsibility to argue for the accused, the court stated: "You may object to my ruling but that is as far as you can go, because the law is very explicit that the test is whether or not the victim believes that it is a dangerous weapon. You can . . . armed robbery can be committed with a weapon that is not loaded. * * *"
The defendant's attorney then objected to the trial court's interruption as a comment on the evidence and also moved for a mistrial. The trial court's adverse rulings are the basis for the assignments of error urged on this appeal.
Applicable Legal Principles
Armed robbery is robbery committed while armed with a "dangerous weapon." La.R.S. 14:64. "Dangerous weapon" is defined as an "instrumentality, which, in *826 the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3).
The definition contemplates the "use of some inanimate instrumentality" as a dangerous weapon. State v. Calvin, 209 La. 250, 24 So.2d 464, 469 (1946), noted 7 La.L. Rev. 288-89 (1947). The "dangerousness" of the instrumentality by reason of the manner in which it is used is a question of fact for the jury to decide. State v. Murff, 215 La. 40, 39 So.2d 817, 823 (1949).
The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm," La.R.S. 14:2(3). See, e. g.: State v. Murff, 215 La. 40, 39 So.2d 817 (1949); State v. Reynolds, 209 La. 455, 24 So.2d 818 (1945). See also Note, 32 La.L. Rev. 158 (1971). This broadly defined term has given rise to a jurisprudence attempting to deal with the situation where a relatively harmless instrument, e. g., a bottle, creates danger because of the manner and the context in which it is used, most often a robbery.
In State v. Johnston, 207 La. 161, 20 So.2d 741 (1945), we held that an unloaded pistol was a dangerous weapon when used in connection with a threat to kill the victim. In doing so, the court noted that the pistol appeared to be in good working order and thus might usually provoke violence occasioning bodily injury or death because of a victim's frequent resort under such circumstances to assault or escape from such apparently grave threat to his own life.
Following Johnston, a series of decisions held that the offender's use in a robbery of an inanimate instrumentality resembling a loaded firearm could be found by the jury to constitute the use of a dangerous weapon in committing an armed robbery. State v. McMorris, 343 So.2d 1011 (La.1977) (bottle held in pocket like pistol would be), noted 38 La.L.Rev. 424-27 (1978); State v. Leak, 306 So.2d 737 (1975) (extension to a rachet coupled with a socket simulating a firearm), noted 36 La.L.Rev. 508-510 (1976); State v. Levi, 259 La. 591, 250 So.2d 751 (1971) (unloaded and unworkable pistol), noted 32 La. L.Rev. 158-63 (1971).
The cited law review commentaries raise two objections to the jurisprudence. First of all, some of these decisions (in particular McMorris) contain language which may incorrectly indicate that the possible use of the instrumentality as a club is sufficient to raise a factual issue as to the weapon's dangerousnesswhereas the statutory standard, La.R.S. 14:2(3), contemplates the actual use of the instrumentality "in the manner used is calculated or likely to produce bodily injury or death." (Italics ours.)
Likewise, these law review critiques note that Johnston and its progeny are open to the construction, unwarranted by the statutory standard, that the test of the weapon's dangerousness lies exclusively in the subjective characterization by the victim of whether he is in danger.
We find to be well-founded these law review criticisms of some of the language in these decisions, and of their alternative rationale (i. e., the possible use of the weapon as a club).
Correctly understood, these decisions recognize that whether an instrumentality resembling a loaded firearm is a "dangerous weapon" is a factual issue to be decided within the immediate context of an armed robbery case. The jury must first of all find that some gas, liquid or other substance or "inanimate" instrumentality was used. Then the jury must determine whether in the manner actually used it was "calculated or likely to produce death or great bodily harm." In making its determination, the jury may find that there was an actual likely danger of serious bodily harm to anyone present in the highly charged atmosphere of the scene of a robbery, taking into consideration the great possibility of violence in the interaction between the offender and the victim thereby put in fear *827 for his life. See Leak at 306 So.2d 738-39.[1] (Of course the subjective reaction of the victim may be some evidence of whether there was an actual likelihood of danger; however, the subjective reaction of the victim is not determinative of the issue.)
In State v. Elam, 312 So.2d 318 (La. 1975),[2] we specifically disapproved the erroneous inferences in argument to the jury "that a victim's subjective reactions are determinative of the issue" whether the weapon used in the robbery was dangerous. 312 So.2d 321. We thus emphasized once again that the test provided by the statutory standard, and traditionally applied by our jurisprudence, is that the instrumentality, to be "dangerous", must be used in a manner which in actual fact is likely to cause death or great bodily injury. Certain of the language in McMorris, Leak, and Levi might be construed as deviating from this standard; we therefore disapprove it as incorrect.
Conclusion
Under these principles, the trial court's language was erroneous insofar as it implied that the test of dangerousness is whether a victim believes the weapon is dangerousalthough the misstatement is understandable in view of this misinterpretation at least implied by some of the language in Levi and Leak.
In any case, the comment is not reversible error under the circumstances: In the context of the defendant's argumentthat an unloaded firearm may not be a dangerous weapon, the trial court apparently intended only to correct the implication that the firearm must be loaded to be dangerous, i. e., that it must be inherently dangerous.
Perhaps it would have been preferable for the court to await opposing counsel's objection or to rely upon opposing counsel's rebuttal to clarify the matter. Nevertheless, the thrust of the clarification is that the firearm admittedly used, even if unloaded might nevertheless be a dangerous weaponbecause, if the victim believes it is loaded, there is objectively a danger of bodily harm or death arising from the great possibility of violent reaction between offender and victim.
*828 Thereforedespite the substantial contention that the trial court's premature interruption and admonition prevented defense counsel from arguing that under the circumstances the (possibly) unloaded .22 caliber pistol was not used in such a manner as to constitute a dangerous weapon[3], we do not find the trial court's interruption to have been a comment on the evidence, nor that it prejudicially tended to limit the trial jury in the exercise of its fact-finding function in the determination of this crucial issue: whether or not the gun in the present case, if unloaded (or not), was used in such manner as to cause actual likelihood of death or great bodily injury, so as to be a dangerous weapon.

Decree
Accordingly, for the reasons assigned, we affirm the conviction and sentence.
AFFIRMED.
SUMMERS, C. J., and MARCUS and DENNIS, JJ., concur.
NOTES
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] In addition to those cited in the text, others of our decisions have also held that a firearm not inherently dangerous (because unloaded or of a non-lethal nature) is nevertheless, for armed robbery purposes, a "dangerous weapon." State v. Leggett, 363 So.2d 434 (La.1978) (air pistol); State v. McClinton, 329 So.2d 676 (La. 1976).

The great weight of national authority likewise holds that an unloaded pistol used in a robbery may be found to be a dangerous weapon, even if not used as a bludgeon. LaFave and Scott, Criminal Law, Section 94 at p. 703 (1972). This treatise points out that the majority view is conceptually wrong, because the aggravating circumstances of the robbery (through use of a dangerous weapon) are intended to be so severely punished because of the greater degree of dangerousness actually occasioned by use of the weapon, as compared with the simple force or intimidation required for the lesser crime of simple robbery (cf. La. R.S. 14:65). Id.
In overlooking this conceptual difficulty, our decisionsin addition to the explanation that objectively danger of death and bodily injury results from the confrontation in a robbery between a victim and an offender apparently armed with a deadly weaponsometimes advert to the difficulty of proof that the weapon used was actually loaded at the time of the robbery, if the weapon used is not recovered from the robbdr at the time of the holdup. The cited treatise comments that some jurisdictions therefore permit the inference that the weapon was loaded to go to the jury, despite the lack of proof that the weapon was loaded, LaFave and Scott, p. 703, or perhaps despite self-serving testimony by the accused after the fact that the gun was not loaded.
[2] In Elam, the offender committed a robbery with threats of shooting, with his hand in his pocket in such a way as indicated he was holding a weapon. We specifically indicated that a hand in a pocket could not be a dangerous weapon (for, as earlier noted, a dangerous weapon must be an inanimate instrumentality used in such manner as calculated or likely to produce death or bodily injury). Nevertheless, we found that this conduct constituted some evidence from which the jury could reasonably infer (at least in absence of opposing evidence) the use of an actual weapon, even though the weapon was not actually found on the robber after he was captured following a chase of several hundred yards. We thus denied reversal, holding there was "some" evidence of the use of a dangerous weapon rejecting the contention that no evidence supported proof of this essential element of the crime.
[3] The immediately succeeding argument of defense counsel dwelled on the lack of dangerousness in the use of the weapon (e.g., no one's finger was on the trigger, the lack of fear on the part of the victim, the offender's cooperation in leaving the stolen automobile and its keys at a given location after use of it for the getaway, per agreement with the victim, etc.) Tr. 45-46.