**L.H. HILLIE, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 82–3273.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1983.

Mary Daffin, Houston, Tex., for petitioner-appellant.

John H. Craft, Mary Charlotte McMullan, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

Appellant L.H. Hillie was convicted by a Louisiana court of attempted armed robbery[1] and sentenced to five years imprisonment. After exhausting state remedies, he filed a petition in United States District Court pursuant to 28 U.S.C. § 2254, alleging that the evidence produced at trial was insufficient to prove that he was armed with a dangerous weapon, an essential element of the crime. He now appeals from the district court's denial of that petition. After examining the record and the Louisiana case law concerning the definition of "dangerous weapon," we affirm.

In July of 1979, three plainclothes policemen observed Hillie walking across the parking lot toward the door of the First National Bank of Commerce in New Orleans. One of them saw Hillie pull an object from his waistband and cover it with a towel. The officer believed that the object was a revolver. The policemen stopped Hillie before he entered the bank and seized the "revolver"—an umbrella handle. Tucked into Hillie's waistband was a brown paper bag containing a note that read, "This is a stick-up. Place twenties, fifties and hundreds on the counter." On the strength of the physical evidence, one of the officer's testimony, and the testimony of two bank tellers who established only that valuables were at the bank, Hillie was convicted.[2] There can be no question that the evidence was adequate to prove that Hillie was guilty of attempted robbery. The only issue is whether there was sufficient evidence to permit a rational trier of fact to find that beyond a reasonable doubt he was guilty of attempted *armed* robbery. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In Louisiana, armed robbery is defined as "the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.Rev.Stat.Ann. 14:64 (West 1974). Under Louisiana law, a " '[d]angerous weapon' includes any gas, liquid or other substance or instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm." La. Rev.Stat.Ann. 14:2(3) (West 1974). In Hillie's case, the instrumentality was an umbrella handle covered with a towel so as to look like a gun. In Louisiana,

> whether an instrumentality resembling a firearm is a "dangerous weapon" is a factual issue to be decided within the immediate context of an armed robbery case. The jury must first of all find that some gas, liquid or other substance or "inanimate" instrumentality was used. Then the jury must determine whether in the manner *actually* used it was "calculated or likely to produce death or great bodily harm."

*State v. Bonier*, 367 So.2d 824, 826 (La.1979) (emphasis in original).

In deciding this issue, the trier of fact—in this case the state court judge—may consider whether

> there was an actual likely danger of serious bodily harm to anyone present in the

[1]. Attempt to commit a crime is defined and made illegal by La.Rev.Stat.Ann. 14:27 (West 1974). The crime of armed robbery is forbidden by La.Rev.Stat.Ann. 14:64 (West 1974).

Hillie's conviction was affirmed without opinion by the Louisiana Supreme Court in *State v. Hillie*, 385 So.2d 15 (La.1980).

[2]. Despite his imaginative explanation for his possession of these objects: that he had been carrying the umbrella handle after his umbrella had been broken by the wind earlier in the day so that he could determine if the handle fit a handleless umbrella that he had at home; that the "stick-up" note was simply something he had sketched while waiting for a job interview earlier in the day after having read a magazine article on bank robberies; and that he carried towels because he sweats a lot.

highly charged atmosphere of the scene of a robbery, taking into consideration the great possibility of violence in the interaction between the offender and the victim thereby put in fear for his life. *Id.* at 826–27.

Likewise, under Louisiana law, this is a fact-bound inquiry. This is illustrated by *State v. Byrd,* 385 So.2d 248 (La.1980). Byrd, like Hillie, was convicted of attempted armed robbery. He had actually pulled out a toy pistol, held it up in the air, and demanded all of the money from the cash register of a fried chicken stand. "[T]he pertinent inquiry here," said the Louisiana Supreme Court, "is whether defendant's use of the toy pistol created a life endangering situation, as in *State v. Levi,* [259 La. 591] 250 So.2d 751 (La.1971)." [3]  385 So.2d at 250. The court set aside Byrd's conviction on the grounds that there was insufficient evidence to prove that such a situation had in fact been created. In the course of doing so, it noted that at no time did Byrd threaten to harm, point the toy at the attendant, or refer to it as a weapon. It also noted that the reaction of the attendant, who slammed the service window in Byrd's face after snatching back Byrd's ordered chicken and sent him on his way, did not indicate apprehension of any great bodily harm. Thus, despite its superficial resemblance to a real gun, the toy was not deemed to have been used as a dangerous weapon. Bearing these observations in mind, we return to today's case.

We deal with the offense of *attempted* armed robbery, which permits us to view the "specific intent" of the defendant to commit a crime. La.Rev.Stat.Ann. 14:27. The law of attempt in Louisiana reads specifically:

> Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be suffi-

cient to constitute an attempt to commit the offense intended.

*Id.* The essential question in this case is whether the defendant's "intended use" of the instrumentality in question, considering the entirety of circumstances, is sufficient to substantiate the finding of a dangerous weapon in a case involving an instrumentality that is not inherently dangerous.

▇▇▇ It is clear that Hillie did more than merely "prepare" an armed robbery, which would be insufficient to support an "attempt" conviction. He was apprehended as he approached the bank with an instrumentality intentionally disguised to look like a gun. In such circumstances, we would be reluctant to reverse a state court finding, based on its own reading of its own law, that this situation constituted an attempt to use an instrumentality as a dangerous weapon. To be sure, it may be objected that if the test is really one of "actual use" then no mortal can say how Hillie would have used his counterfeit weapon until he had done so. In the attempt situation this proves too much, however, since by the same reasoning one apprehended while making for the bank with a demand note and a hand grenade could not be convicted. We think the more reasonable view of the actual use test, as applied in attempt situations, is to inquire whether the evidence permits a reasonable inference that the manner of use of either a real or a simulated weapon is to be such as to create a life-endangering situation through the reaction of the proposed victim or otherwise. Here, the reasonable inference is that Hillie meant to draw what appeared to be a pistol on a bank teller—a "stick-up" as his note proclaimed—and demand money, and the highly-charged atmosphere of an armed bank robbery was to be created. We cannot say that the Louisiana courts erred in so concluding.

That they did so cannot be doubted, although the trial court simply found Hillie guilty and the state appellate court affirmed without opinion. The very contention that Hillie makes to us was made to

---

**3.** In *Levi,* the "instrumentality" was an unload-    ed pistol.

them and necessarily, in view of their rulings, by each rejected. In such circumstances, our stated reluctance to second-guess the Louisiana judiciary on what is at best a mixed question of fact and Louisiana law is great.

That reluctance is increased by the context in which the issue is presented. Section 2254(d) provides specific limitations on our powers in such cases as this, limitations that read in relevant part:

> In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to a State Court, a determination after a hearing on the merits of a factual issue, made by a State Court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof or parties, evidenced by a written finding, written opinion, or other reliable and adequate indicia, *shall be presumed to be correct,* unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

> . . . . .

> (8) or unless that part of the record of the State Court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal Court on a consideration of such part of the record as a whole *concludes that such factual determination is not fairly supported by the record* . . . . (emphasis added).

The Supreme Court, in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), has interpreted this portion of the statute and has made it clear that it is to be applied strictly. Therefore, for us to overturn the conviction below by disturbing the factual determination that a deadly weapon was used, we would be required to make the explicit finding that such a factual determination was not "fairly supported by the record." On our reading of the Second Circuit case approved by the Supreme Court in *Sumner,* the "fairly supported by the evidence" standard requires us to review only the evidence presented in support of the factual finding rendered by the state court. *See Burke v. Elliott,* 606 F.2d 375 (3rd Cir.1979).

We must therefore review the record to determine if evidence in support of the finding that the broken umbrella handle draped under a towel and thereby disguised as a gun represented a dangerous weapon is "fairly supported." If, as we have concluded, we are permitted to review the evidence of the likely situation within the bank had the defendant been permitted to enter as he intended, there is substantial evidence on the record that a life-endangering situation would have been created. Louisiana courts have found not inherently dangerous instrumentalities resembling a loaded firearm to be dangerous weapons if used while committing a robbery. *See State v. McMorris,* 343 So.2d 1011, (La.1977); *State v. Leak,* 306 So.2d 737 (La.1975); *State v. Levi,* 259 La. 591, 250 So.2d 751 (1971). According the pronouncements of the Louisiana courts appropriate deference, we conclude that the judgment below must be

AFFIRMED.

THORNBERRY, Circuit Judge, concurring specially:

Because of my reluctance to reverse the Supreme Court of Louisiana's reading of Louisiana law, I concur in the opinion of the majority.

I am nonetheless troubled by the possibility that in its one word affirmance of Hillie's conviction for attempted armed robbery, the Supreme Court of Louisiana has criminalized behavior not prohibited by any lawfully enacted state statute, thereby depriving Hillie of his constitutional right against deprivation of liberty without due process of law.

Until now, the Louisiana courts have required that an ordinarily harmless instrumentality *actually be used* in a manner calculated or likely to produce death or great bodily harm before it can be labelled

a dangerous weapon. In *State v. Bonier,* 367 So.2d 824, 826 (La.1979), the Louisiana Supreme Court explicitly rejected the claim that the *possible* use of an otherwise harmless instrumentality as a club was sufficient to raise a factual issue as to the weapon's dangerousness. In so doing, the court hewed closely to the relevant statutory language, providing that a "[d]angerous weapon includes ... any instrumentality which, *in the manner used,* is likely to produce death or great bodily harm." La.Rev.Stat. Ann. 14:2(3) (West 1974) (emphasis added). I recognize that *Bonier* was a case of armed robbery, not attempted armed robbery. However, in a subsequent attempted armed robbery case, *State v. Byrd,* 385 So.2d 248 (La.1980), the court again identified the pertinent inquiry as "whether defendant's use of the toy pistol *created* a life-endangering situation." *Id.* at 250 (emphasis added). Because Byrd's actual use of the toy pistol did not create a life-endangering situation, the court found that it was not a dangerous weapon, and reversed his conviction.

In both *Bonier* and *Byrd,* the Supreme Court of Louisiana found that an otherwise harmless instrumentality could be a dangerous weapon only when actually used as one *because the statutory language defining* "dangerous weapon" explicitly stated as much. Criminal statutes are, of course, meant to be narrowly construed.

The actual use test is well-suited to an armed robbery case like *Bonier,* where a robbery is actually committed, as well as to an attempted armed robbery case like *Byrd,* where the defendant gets far enough along in his attempt to actually use the otherwise harmless instrumentality in a manner which converts it into a dangerous weapon. The test cannot be applied in a case like the one before us, where defendant never even got out of the starting gate. From this I think it reasonable to conclude that the Louisiana Legislature in enacting section 14:2(3) nev-

er intended to criminalize behavior like Hillie's non-use of an umbrella handle.[1] Stated differently, the Legislature in enacting this statute did not choose to incidentally create the crime of "attempted armed robbery with an attempted dangerous weapon."

Indeed, it is far more reasonable to conclude that the Louisiana Legislature intended to criminalize only the *dangerous* use of *an otherwise harmless instrumentality.* The offense of simple robbery carries a maximum sentence of seven years, with or without hard labor. Parole, probation, and suspension of sentence are all available. But for armed robbery, the *minimum* sentence is five years at hard labor, without benefit of parole, probation, or suspension of sentence. As the Louisiana Supreme Court said in *Byrd:* "Clearly, the statutory scheme contemplates the more severe penalty is intended to deter the use of truly dangerous instrumentalities." *Byrd,* 385 So.2d at 251. This policy holds true for both inherently and otherwise harmless dangerous weapons whenever the latter are actually used in such a manner as to become dangerous. However, by implicitly creating the offense of attempted armed robbery with an attempted dangerous weapon, and then subsuming it under the offense of attempted armed robbery, the Louisiana Supreme Court may well be going beyond the Legislature's intent by imposing the considerably stiffer penalties for robberies committed with the aid of dangerous weapons, where no dangerous weapon was actually used. In so doing, it may be imposing a criminal sanction not contemplated by any statute.

On the other hand, it is the job of the courts to construe and apply the law. The Legislature cannot possibly foresee every factual situation to which it intends that a given law apply. Let us assume for the sake of argument that the Louisiana Su-

---

1. I am not persuaded that my application of the actual use test in a pre-robbery situation "proves too much ... since by the same reasoning one apprehended while making for the bank with a demand note and a hand grenade could not be convicted." A hand grenade, like a loaded pistol, "is a dangerous weapon irrespective of how used or exhibited." *State v. Gould,* 395 So.2d 647, 655 (La.1980) (on rehearing).

preme Court's application of section 14:2(3) in this case constitutes a permissible construction of that statute consonant with legislative intent. In that case, we must consider whether, under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence is such that no rational trier-of-fact could have found proof of guilt beyond a reasonable doubt.

I am not certain that the evidence supports the jury's verdict under *Jackson.* Crimes of attempt fall on a continuum between conspiracy, and actual commission of the crime. They are distinguished from conspiracy in that they require some overt act toward commission of the crime. I have no difficulty with the conclusion that Hillie is guilty of attempted robbery. Walking toward a bank carrying a stick-up note certainly constitutes an overt act toward the commission of a robbery. Applying the same reasoning to attempted armed robbery, we must ask ourselves whether Hillie committed an overt act sufficient to constitute an attempt to convert the otherwise harmless umbrella handle into a dangerous weapon. Walking toward a bank with an umbrella handle wrapped in a towel certainly suggests that the handle is intended to be perceived and used as if it were a gun. Under Louisiana law, the test of a dangerous weapon in an armed robbery or a thwarted armed robbery attempt is whether the phony weapon creates a life-endan-

gering situation. In an attempted armed robbery case like this one, I assume *arguendo* that the test would be whether the umbrella handle was used in a manner indicating that it was to be used to create a life-endangering situation. The record provides no indication that had Hillie walked into the bank with his umbrella handle draped in a towel, he would have endangered anyone's life. There is no evidence that the bank contained an armed guard, whose expected reaction to Hillie's attempt could have created a life-endangering situation. Because Hillie's attempted robbery was thwarted at so early a stage, too much speculation is inherent in the conclusion that the manner in which he *would* have used the umbrella handle *would* have created a life-endangering situation. Criminalizing such activity on such a speculative foundation is precisely what the actual use test was designed to avoid.

In *Byrd,* we must remember, defendant actually tried to hold up the cashier at the window of a fried chicken stand with a toy pistol. The Louisiana Supreme Court found that although a toy pistol could under some circumstances be used to create a life-endangering situation supporting a guilty verdict of armed robbery, such was not the case there.[2] In our case, I fear that the Louisiana Supreme Court, without articulating the basis of its decision, is in effect

**2.** The actual use test has thus far been applied in attempted armed robbery cases only to preclude speculation as to how the otherwise harmless instrumentality might have been used, where we know enough about how it was actually used to determine whether its use created a life-endangering situation. Admittedly, this is a different use of the test than that presented in our case, where we cannot determine whether a life-endangering situation was created because the otherwise harmless instrumentality was never used. However, the fact that the test has been used only to rule out speculation in the face of controverting evidence as to the instrumentality's actual use certainly does not authorize speculation as to its possible or even probable use where, as in our case, it was never used. Conjecture about how an otherwise harmless instrumentality might be used is an insufficient basis for converting it into a dangerous weapon precisely because it is so speculative. Cases like *Byrd,*

in which an otherwise harmless instrumentality could conceivably have been used in such a manner as to create a life-endangering situation, but was not, clearly show just how unacceptable this type of speculation is. Had Byrd never made it to the chicken stand, the majority's reading of Louisiana law in our case would authorize a jury to find him guilty of attempted armed robbery. As it was, Byrd actually attempted the botched robbery, but failed to use the toy pistol in such a manner as to convince the Louisiana Supreme Court that he had created a life-endangering situation. Similarly, had Hillie actually made it to the bank, but failed in his attempted robbery, the use he made of his umbrella handle in the bank lobby might well have precluded a jury from finding him guilty of attempted armed robbery. Yet where he never made it to the bank, the Louisiana Supreme Court simply presumes that his use of the umbrella handle would necessarily have created a life-endangering situation.

holding that Hillie not only could have created a life-endangering situation, but that he did in fact attempt to do so when there is no evidence, and no explicit finding, that he would have or could have done so even if he had wanted to.

As a federal appellate court, however, we are not the final arbiters of decisions construing state law. Because I am not absolutely certain that the Louisiana Supreme Court is reading beyond the Legislature's intent in enacting section 14:2(3), and because that court has itself determined that the evidence supports its somewhat mysterious construction of that statute, I am obliged to concur in the opinion of the majority in this case.