NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 KA 1142

STATE OF LOUISIANA

VERSUS

DWAINE JOSEPH WOODS, SR.

Judgment rendered____JUN 1 6 2021____

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. 02-12-0330, Section 8

The Honorable Bruce C. Bennett, Judge Presiding[1]

* * * * *

| | |
|---|---|
| Jeff Landry<br>Attorney General<br>Tasha K. Stockwell<br>Assistant Attorney General<br>Louisiana Department of Justice<br>Baton Rouge, Louisiana | Attorneys for<br>Appellee/Appellant<br>State of Louisiana |
| La'Deisha N. Woods<br>Appellate Counsel<br>Port Allen, Louisiana | Attorney for<br>Defendant/Appellant/Appellee |

* * * * *

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

---

[1] Judge Trudy M. White presided over the trial in this matter.

1

**HOLDRIDGE, J.**

The defendant, Dwaine Joseph Woods, Sr., was charged by grand jury indictment with one count of conspiracy to commit forgery (count I), a violation of La. R.S. 14:26 & 14:72; nineteen counts of forgery (counts II – XX), violations of La. R.S. 14:72; and one count of theft by fraud (value over $500.00) (count XXI), a violation of La. R.S. 14:67.[2] Following a jury trial, he was found not guilty on counts I – XX and guilty as charged on count XXI. On count XXI, he was sentenced to ten years at hard labor and ordered to pay $6,930,520.01 restitution. Following a hearing,[3] the court found the defendant to be indigent. Thereafter, following an additional hearing,[4] the court modified the restitution obligation by ordering the defendant to pay $10,000.00 restitution for the expenses of prosecution by the Attorney General's Office[5] and zero restitution to the Louisiana Department of Health and Human Resources.[6] The court also reserved to the defense the right to file a motion to reconsider sentence. The State moved for reconsideration of the revised restitution order of January 4, 2019, reducing the defendant's restitution to the DHH to zero, but the motion was denied. The defense filed a motion to

---

[2] Dynetta Hadrick Woods was charged by the same indictment with the first twenty counts. Millennium Health Care Services, L.L.C. d/b/a Millennium PCA Services (Millennium) was charged by the same indictment with the same offenses as the defendant. Dynetta Woods and Millennium separately appeal from their convictions. See **State v. Woods**, 2019-1141 (La. App. 1 Cir. __/__/__) & **State v. Millennium Health Care Services, LLC, d/b/a Millennium PCA Services**, 2019-1143 (La. App. 1 Cir. __/__/__).

[3] On January 8, 2018, the defendant filed a motion to be declared indigent. On May 7, 2018, following a hearing, the motion was denied. Thereafter, the defendant filed a writ application with this court seeking review of the trial court's ruling on the motion. This court granted the writ application and remanded the matter to the trial court to reopen the hearing and to reassess the defendant's circumstances in compliance with the provisions of La. R.S. 15:175. See **State v. Woods**, 2018-0913 (La. App. 1 Cir. 8/30/18), 2018 WL 4190959. On December 12, 2018, the trial court held a hearing to determine whether the defendant was indigent.

[4] On January 8, 2018, the defendant filed a motion for a restitution hearing. The hearing was held on January 4, 2019.

[5] See La. C.Cr.P. art. 887(A) ("[a] defendant who is convicted of an offense ... shall be liable for all costs of the prosecution....").

[6] The Louisiana Department of Health and Human Resources is now known as the Louisiana Department of Health.

2

reconsider sentence on January 16, 2019. The defendant's motion was granted on April 5, 2019, and the defendant was resentenced to ten years at hard labor, with any portion in excess of time served suspended, and three years' probation, subject to the conditions previously set forth, including that he make full and complete restitution of the $10,000.00 previously ordered by the trial court in the amount of $300.00 per month. The defendant now appeals, challenging the sufficiency of the evidence, claiming the trial court erred in denying his request for a bill of particulars, claiming the trial court failed to review the record before denying post-trial motions and imposing sentence, and challenging the record as incomplete for review. The State appeals, challenging the modification of restitution and the granting of the motion to reconsider sentence. See La. C.Cr.P. art. 881.2(B)(2). For the following reasons, we reverse the conviction and sentence.

## FACTS

In 2004, the defendant founded Millennium Health Care Services, LLC (Millennium), which did business as Millennium PCA (personal care assistance) Services. He listed himself as the president of Millennium, and his wife, co-defendant Dynetta Woods, as the secretary of the company. Millennium provided personal care services, with the majority of its business involving services billed to Medicaid. Between 2006 and 2010, Millennium billed Medicaid approximately $7,000,000.00.

DHH surveyor LaShonda Michele Watts testified at trial. On December 4, 2006, she conducted a survey of Millennium. She explained that if a provider is cited with a deficiency, it is given an opportunity to correct the deficiency. A "plan of correction" is the provider's response to a deficiency and sets forth the provider's actions to correct the deficiency. If part of a plan of correction is not accepted, DHH follows up with a letter asking the provider to provide additional information or clarification.

3

In her 2006 survey, Watts cited Millennium with sixteen deficiencies. Those deficiencies included Millennium's failure to have the required documentation of CPR training for fourteen of sixteen sample staff members. Watts agreed, however, that the regulation requiring CPR training "came out" in November of 2006, and all but one of the sixteen employees referenced in the deficiency were hired before that date. Millennium's plan of correction indicated that it secured an agreement with Devossia Brown to train Millennium employees in CPR on an "as needed basis," but at least every forty-five days.

Millennium was also cited in the 2006 survey for failing to have evidence of written minutes of formal meetings of its governing body. The plan of correction indicated that Millennium had obtained copies of board meetings and had placed them in the administrative file located in the office. Millennium was also cited for failing to have an annual external audit for the governing body to review and approve. The plan of correction indicated that Millennium had contracted with Doug Davidson, CPA, to conduct an annual audit and upon completion, the Millennium board of directors would review and approve the audit. Additionally, Millennium was cited for failure of the administrator (the defendant) to have an annual evaluation. The plan of correction indicated that on December 18, 2006, Board President Donald Triggs called an emergency board meeting and conducted an annual evaluation of the defendant.

As a surveyor, Watts did not receive the plan of correction concerning the 2006 survey. She agreed, however, that she cited the deficiencies on "the left hand side of [the] form."[7] When asked if the cited deficiencies were "criminal in nature[,]" Watts answered, "[t]his is just a license regulation – based on license regulations." Watts conceded that DHH had a duty to "follow up" on the plan of correction. Watts agreed that none of the deficiencies cited resulted in the revoking

_____

[7] Records for 2006 were unavailable from DHH because it purged its records every three years.

4

of the license issued to Millennium and the defendant. Watts was "not sure" whether any of the deficiencies prohibited a provider from billing Medicaid for services provided. She agreed, however, that the survey did not cite any deficiencies concerning a PCA worker not providing a service.

Devossia Brown testified at trial. She was a certified CPR instructor. Brown testified she never had a written contract or written agreement with Millennium to provide CPR or first aid training to its workers. She did not recall if she ever had an oral agreement with Millennium to provide training to its workers. Brown identified S-11 as a letter indicating she had been contracted by the defendant. The letter purported to have her letterhead, but incorrectly spelled her name. It was also signed with her name, but Brown stated the signature was not her signature. The letter did not indicate it had been signed by someone else with Brown's permission. Brown, stated, however, after being visited by Elizabeth Robinson five days earlier, she remembered "[Brown] just authorized a letter to be sent out on [her] behalf to say [she] had taught a class." Robinson was Brown's friend "from years ago," and a former Millennium employee. Brown recalled a conversation with Robinson "years ago" in which Robinson stated she needed a letter to submit with a corrective action plan to DHH. Brown told Robinson that Brown was unavailable and unable to write the letter. Robinson asked Brown if Robinson could "direct" the letter stating that Brown "did perform the classes and that these people did take the CPR classes." Brown testified she "thought it was not a problem at that time."

Douglas Davidson testified at trial. He had been a licensed CPA in Louisiana since 1999. He processed payroll for Millennium. He identified S-11 as a December 19, 2006 engagement letter between himself and Millennium. Davidson was hired to "compile [Millennium's] data and not do an audit." He explained that a compilation involved taking the client's "numbers" at "face value" and putting them in the form of a financial statement. He indicated, however, even when he

performed a compilation report it did not necessarily have to be independent when performing the compilation, he was still considered an independent auditor "just doing maybe a lower level service." Davidson testified he never told the defendant that the defendant would have to go to the board of directors and have the "audit" approved. Davidson did not recall if he was ever subsequently hired to perform a compilation or an external audit for Millennium. Davidson was never contacted by DHH in regard to the compilation he performed for Millennium.

Donald Joseph Triggs, Jr., testified at trial. He had been working in the oil field for about twenty-one years. He had been friends with the defendant since Triggs was twelve years old. Triggs gave the defendant permission to use Triggs' name as a Millennium board member. Triggs initially stated he had no involvement with Millennium or DHH. He further stated he did not remember attending a board meeting on August 15, 2006. However, after reviewing the minutes of the board meeting, he stated, depending on the definition of "meeting," he had in fact met with the defendant about what the defendant wanted and the direction in which the defendant wanted to take Millennium. Triggs had not reviewed any financial documents related to Millennium. He had "no idea" of the financial status of the company. He did not participate in the creation of a "logo" for the company.

Triggs had been to Millennium's office in Lafayette approximately seven or eight times. When asked if he knew anything about the operation of Millennium's Lafayette office, he replied, "No, not really. I mean, [the defendant] would explain to me that he was trying to take [Millennium] into the Lafayette area." When asked if he was testifying that he did not know "much about Millennium[,]" he replied, "I know what [the defendant] would inform me of and as to what I would see him trying to do. But, other than that, financial status and all this, no, I don't."

Triggs had no knowledge of the December 4, 2006 survey of the Baton Rouge location of Millennium. When asked if he knew what the requirements were

in 2006 for CPR instruction, he replied, "No. I'd assume it's the same as my job, you have to be CPR certified." He had no recollection of ever calling or going to an emergency board meeting. He did not know what an external audit was "as far as Millennium." He was also unfamiliar with Davidson.

Triggs initially stated, even if he did not feel that the defendant was doing a good job as the administrator of Millennium, he lacked the authority to fire the defendant. Thereafter, however, he stated, as the board president, he did have the authority to fire the defendant. Triggs indicated he had no knowledge about what was happening at Millennium and was unaware of the company's mission. When asked if he knew how well the defendant was achieving his goals and objectives, Triggs replied, "[w]ell, just talking to him, he'd just let me know that his business was coming along pretty good[.]"

Triggs described the defendant's long-term goals in regard to Millennium as "[j]ust wanted to have a business, run his business, and be the best he could at it." In regard to the evaluation of the defendant submitted to DHH under Triggs' name, Triggs indicated the defendant had not evaluated himself. Triggs further stated, "[i]t was an evaluation and he mentioned it to me and I told him to sign it. I am aware of that."

The defendant testified at trial. He stated Millennium's provider agreement was terminated on September 15, 2010 due to his indictment on the instant charges. Millennium became ineligible to bill Medicaid in October of 2009. Prior to that time, however, Millennium's license had been renewed every year it existed. In some of those years, Millennium had been cited with zero deficiencies. The defendant testified, that if he heard nothing from DHH after submitting a plan of correction, Millennium remained licensed to provide services. DHH had never rejected any of the plans of correction submitted by Millennium. Further,

Millennium had never been "referred for provider fraud" for billing for services that were not rendered.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number 1, the defendant contends the evidence presented at trial was insufficient to support the guilty verdict. He argues there is no basis for the State's theory that neither he nor Millennium were entitled to funds paid for services provided through the Medicaid program because they should not have been licensed at the time.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Eason**, 2019-0614 (La. App. 1 Cir. 12/27/19), 293 So.3d 61, 69.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. The facts then established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a

rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **Eason**, 293 So.3d at 69-70.

The due process standard of **Jackson** "does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict." **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). In cases of circumstantial evidence, the **Jackson** standard means that when a jury "reasonably rejects the hypothesis of innocence presented by the [defense], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." **State v. Captville**, 448 So.2d 676, 680 (La. 1984). Nevertheless, the **Jackson** standard does not permit jurors "'to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" **State v. Mussall**, 523 So.2d 1305, 1311 (La. 1988) (quoting 2 C. Wright, Federal Practice & Procedure, Criminal 2d § 467 at 660-61 and n.23 (2d ed. 1982)). See **State v. Jones**, 2016-1502 (La. 1/30/18), ___ So.3d ___, ___, 2018 WL 618433 at *3 (per curiam).

As defined in La. R.S. 14:67(A), theft consists of the following elements: (1) the misappropriation or taking of anything of value, (2) which belongs to another, (3) without the consent of the other or by means of fraudulent conduct, practices, or representations, and (4) with the intent to permanently deprive the other of the object of the misappropriation or taking. Theft is a specific intent crime. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is an ultimate legal conclusion to be resolved by the fact finder. **State v. Fisher**, 2013-1152 (La. App. 1 Cir.

9

6/6/14), 2014 WL 3765945 at *4. The gist of theft by fraudulent conduct or misrepresentations is a misappropriation or the taking of money by fraudulent conduct or representations. "Fraudulent conduct" is a conclusion of law. See **State v. Heymann**, 256 La. 18, 24, 235 So.2d 78, 80 (1970).

The defendant was convicted only on count XXI. In that count, the State charged that "[s]ometime between November 1, 2006 and November 1, 2010" Millennium and/or the defendant committed or caused the commission of "[t]heft by [f]raud by either or both of them misappropriating or taking anything of value which belong[ed] to another without consent, or by fraudulent conduct, practices, or representations with the intent to deprive the owner permanently of the thing of value taken, which was over $500[.00.]" At trial, the State alleged that the charge stemmed from a plan of correction submitted following a 2006 survey noting deficiencies. The State argued the defendant made several material misrepresentations in the plan of correction, including that he had "an official letter head" from Brown reflecting a contract for CPR training; that he had hired Davidson as a CPA to do a complete external audit of Millennium; and that he had a board of directors that met formally and would evaluate him. According to the State, DHH cleared Millennium and the defendant of the deficiencies noted in the 2006 survey on the basis of the "fraudulent false misrepresentations," and they continued to bill Medicaid "millions of dollars" from 2006 until 2010. Arguing, "any material [mis]representation is fraud[,]" the State invited the jury to convict the defendant of theft if it found he had made any material misrepresentation in his plan of correction.

Under the Louisiana Administrative Code,[8] providers "only have a right to receive payment for valid claims." La. Admin. Code tit. 50, pt. I, §4115(B)

---

[8] Reference is made herein to the version of the Louisiana Administrative Code in effect prior to the amendment of the regulations in November of 2012.

(2003). A "claim" is "any request or demand, including any and all documents or information required by federal or state law or by rule made against Medical Assistance Program funds for payment." La. Admin. Code tit. 50, pt. I, §4103(A) (2003). A "false or fraudulent" claim is "a claim which the provider or his billing agent submits knowing the claim to be false, fictitious, untrue, or misleading in regard to any material information." **Id**.

There was no evidence in this case that the defendant committed theft by billing DHH for services not provided or by overbilling. Rather, the State claimed the defendant committed theft by billing for valid services provided after submitting "fraudulent false misrepresentations" in response to the 2006 survey. The evidence failed to establish, however, that the defendant's responses to the 2006 survey made his claims unauthorized for payment, i.e., "false or fraudulent." Watts indicated if a provider is cited with a deficiency, it is given an opportunity to correct the deficiency before any other action is taken against it. In the event that DHH found any part of the provider's plan of correction (the provider's attempt to correct the deficiency) unacceptable, it had a duty to follow up with a letter asking the provider to "provide additional information," or to clarify an "area that needs clarification." There was no follow up by DHH to the defendant's plan of correction and none of the deficiencies cited in the 2006 survey resulted in the revoking of the license issued to Millennium and the defendant.

While a provider's "[f]ailure to comply with any or all federal or state laws applicable to the Medical Assistance Program or a program of the Medical Assistance Program in which the provider, provider-in-fact, agent of the provider, billing agent, affiliate or other person is participating"[9] *could* result in sanctions including, "exclusion from the Louisiana Medicaid program or one or more of its

---

[9] See La. Admin. Code tit. 50, pt. I, §4147(A)(1) (2003).

11

programs"[10] and "suspension from the Medicaid program or one or more of its programs pending the resolution of the department[']s administrative appeals process[,]"[11] it was completely speculative to find that the defendant's plan of correction *would* result in such sanctions. Based on the evidence presented, the jury could only speculate that the defendant was guilty of theft.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first assess the sufficiency of the evidence, see **State v. Hearold**, 603 So.2d 731, 734 (La. 1992), because the accused may therefore be entitled to an acquittal under **Hudson v. Louisiana**, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The defendant here is so entitled. See generally **State v. Corkern**, 593 So.2d 1259, 1260 (La. 1992) (per curiam) (When the state's evidence merely invites the jury to speculate on a number of reasonable probabilities, some consistent with guilt, others consistent of innocence, a reasonable jury must entertain a reasonable doubt of the defendant's guilt.). Therefore, we need not consider defendant's remaining assignments of error or the State's appeal as to the restitution owed by defendant. Accordingly, for the reasons assigned, the defendant's conviction and sentence are reversed and a judgment of acquittal is entered in his favor. See **Jones**, 2018 WL 618433 at *3.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of defendant, Dwaine Joseph Woods, Sr., are reversed and a judgment of acquittal is entered in his favor.

**CONVICTION AND SENTENCE REVERSED.**

---

[10] See La. Admin. Code tit. 50, pt. I, §4161(A)(14) (2003).

[11] See La. Admin. Code tit. 50, pt. I, §4161(A)(15) (2003).