# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2022 KJ 0028

## STATE OF LOUISIANA IN THE INTEREST OF D.B.

**DATE OF JUDGMENT:**     JUL 2 9 2022

ON APPEAL FROM THE CITY COURT OF EAST ST. TAMMANY, JUVENILE DIVISION, PARISH OF ST. TAMMANY, STATE OF LOUISIANA, DOCKET NUMBER 21 JC 3026

HONORABLE BRYAN D. HAGGERTY, JUDGE

* * * * * *

Warren L. Montgomery
District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

D. Rex English
Assistant District Attorney
Slidell, Louisiana

Jerry Bryant Clark
Assistant District Attorney
Covington, Louisiana

Katherine M. Franks
Madisonville, Louisiana

Counsel for Defendant-Appellant
D.B.

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: **ADJUDICATIONS AND DISPOSITIONS AFFIRMED.**

Guidry, J. Concura.

Holdridge J. concurs

**CHUTZ, J.**

D.B.,[1] a seventeen-year-old juvenile, was alleged to be delinquent by juvenile delinquency petition based on two counts of attempted simple burglary, violations of La. R.S. 14:27 and 14:62 (counts I and II). He denied the allegations and moved to suppress evidence of his identity as the perpetrator. The motion was denied. Following an adjudication hearing, he was adjudged delinquent as alleged on both counts. Following a disposition hearing, the juvenile court placed D.B. in the custody of the Office of Juvenile Justice for twenty-four months on each count, with twelve months of each disposition suspended and the dispositions to run concurrently. The juvenile now appeals, challenging the sufficiency of the evidence and the denial of his motion to suppress. For the following reasons, we affirm the adjudications and dispositions.

## FACTS

Karen Embree testified at the adjudication hearing. She lived with her husband, Sean Fagan, in Slidell. On July 29, 2021, at approximately 9:00 p.m. or 9:30 p.m., she was sitting on her porch waiting for her daughter to arrive home. Embree saw two individuals outside. They were wearing hoods and long pants even though it was the middle of summer. They were also walking "really slow." They had "kind of masks on their face[s]." She conceded, however, that "Covid" was still a problem at that time. When Embree stood up to turn around and walk back inside, she noticed the individuals had also turned around and were now walking back in the same direction from which they had come. Embree went inside her house and alerted Fagan.

Fagan testified that on July 29, 2021, Embree alerted him that there were two "strange people acting suspicious outside." Fagan went outside and saw "two

---

[1] Pursuant to Rules 5-1(a) and 5-2 of the Uniform Rules-Courts of Appeal, we reference the minor by his initials.

2

youngsters." The juveniles[2] were walking around "a little aimlessly" and looking over fences. Fagan began following the juveniles, staying 20 to 30 yards behind them. The juveniles "pull[ed] on car [door] handles," on the passenger side, of two vehicles. After the juveniles noticed Fagan, they "took off quite quickly." Fagan returned to his home and told Embree to call 911. Fagan described the individuals based on weight, clothing, number of people, and height, specifically stating that one of them was approximately 5' 11" tall, while the other one was approximately 6' 1" tall. Fagan told the police dispatcher the shorter juvenile was wearing a "black hoodie, hood up." Fagan stated the taller juvenile was wearing "a grey hoodie, maybe tan, with black lettering, khaki pants I believe."

After the police arrived, Fagan advised them of the observations he had made concerning the juveniles. Thereafter, the police approached him, stating, "we think we got them," and asked if he could "do an in-car I.D." Fagan told the police he had not seen the faces of the juveniles, but had observed their clothes, height, and weight.

The police transported Fagan in the rear of the police unit on the driver's side to where the juveniles were being detained down the street. Fagan made a positive identification from approximately 50-60 feet away.[3] He indicated he had "no doubt" in his mind. He further indicated he could see the juveniles clearly. The area was well lit. There were streetlights, lights from passing traffic, and light from the spotlight on the police unit. The juveniles were wearing exactly the same clothes that they had been wearing when Fagan initially saw them. One of the juveniles was wearing a black "hoody" and khaki pants. The taller juvenile was wearing a grey "hoody" with black writing and khaki pants. Fagan indicated, given that it was 92 degrees outside with 88 percent humidity, it was unusual that the juveniles "were in

---

[2] The record indicates that the second subject involved in the incident was also a juvenile.

[3] On cross-examination, Fagan indicated he made an identification of the juveniles from approximately 25 yards away.

hoodies with hoods up." At the time of the identification, police officers were "standing around."

Fagan also identified the juveniles at the adjudication hearing. He indicated he had "no doubt" in his mind.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number one, the juvenile contends the evidence was insufficient to establish his specific intent to enter the vehicles with the specific intent to commit a theft or felony within them. He argues no evidence was presented that he entered the cars, opened the doors, or took anything from inside of the cars. He further argues there was no evidence the cars were locked at the time of the incident. Lastly, he argues no evidence was presented he was found with any burglary tools to establish his intent to commit a theft.

In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch. Code art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. Accordingly, in delinquency cases, the standard of review for the sufficiency of evidence is that enunciated in **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *i.e.*, whether viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821.[4] **State in Interest of T.C.**, 2018-1246 (La. App. 1st Cir. 12/21/18), 269 So.3d 716, 718. In reviewing sufficiency, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable

---

[4] In the absence of specific procedures provided by the Louisiana Children's Code, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. See La. Ch. Code art. 803.

4

hypothesis of innocence is excluded. La. R.S. 15:438; **State v. Currie**, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So.3d 978, 982.

The trier-of-fact, in this case, the juvenile court, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the factfinder. Moreover, conflicting testimony as to factual matters is a question of the weight of the evidence, not its sufficiency. **State in Interest of T.C.**, 269 So.3d at 719. Such a determination rests solely with the trier-of-fact who may accept or reject, in whole or in part, the testimony of any witness. A trier-of-fact's determination as to the credibility of a witness is a question of fact entitled to great weight. A trier-of-fact's credibility determination will not be disturbed unless it is clearly contrary to the evidence. In the absence of internal contradictions and irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trial court, is sufficient to support a conviction. However, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the juvenile court was clearly wrong in its factual findings. See La. Const. art. 5, § 10(A); **State in Interest of T.C.**, 269 So.3d at 719-20.

In pertinent part, "[s]imple burglary is the unauthorized entering of any ... vehicle, ... with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60." La. R.S. 14:62(A). To be guilty of simple burglary, a defendant must have the specific intent to commit a felony or theft therein at the time of his unauthorized entry. *State v. Godbolt*, 2006-0609 (La. App. 1st Cir. 11/3/06), 950 So.2d 727, 730. Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. Specific intent need not be proven as a fact, but

5

may be inferred from the defendant's actions and the circumstances of the transaction. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier-of-fact. **State v. Armentor**, 2019-1267 (La. App. 1st Cir. 7/31/20), 309 So.3d 762, 767, writ denied, 2020-01032 (La. 2/17/21), 310 So.3d 1149. Additionally, flight and attempt to avoid apprehension are circumstances from which the trier-of-fact may infer guilty conscience. It is not necessary for a simple burglary conviction that an actual theft occur. **State v. Hooker**, 623 So.2d 178, 184 (La. App. 2d Cir. 1993).

In addition to proof of specific intent to commit a felony or any theft therein, attempted simple burglary requires proof that the defendant did, or omitted to do, an act "for the purpose of and tending directly toward the accomplishing of his object," sometimes referred to as an overt act. See La. R.S. 14:27(A) and Reporter's Comment (1950) thereto. The attempt statute itself makes a distinction between an act that is mere preparation, which is insufficient to support a finding of an attempt, and an act for the purpose of, and tending directly toward, accomplishing an object, which is an essential element of the attempt statute. **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 661-62. "Preparation" has been defined generally as the devising or arranging of the means necessary for the commission of the crime. **Ordodi**, 946 So.2d at 662.

The difference between mere preparation and an overt act is not precisely defined. The Comment to the attempt statute states "[t]he distinction between preparation and an overt act sufficient for an attempt is one of nearness and degree which defies concise definition, and which can best be approximated by an examination of the jurisprudence." See La. R.S. 14:27, Reporter's Comment (1950). Thus, a defendant's actions that are mere preparation and those that are an act for the purpose of and tending directly toward the accomplishing of an object may be understood to exist on a continuum. See **Ordodi**, 946 So.2d at 662.

6

Where a defendant's actions fall on the continuum is a fact question for the jury or trier-of-fact. In determining whether a defendant's action is an overt act which is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. **Ordodi**, 946 So.2d at 662. The overt act need not be the ultimate step toward, or the last possible act in, the consummation of the crime attempted. The distinction between actions that are mere preparation and actions that constitute an overt act sufficient for attempt is one of degree and is dependent on the particular facts of each case. Thus, the determination of a defendant's actions as being mere preparation or acts sufficient to constitute an attempt will be fact specific to each case. **Ordodi**, 946 So.2d at 662.

Viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the State proved the essential elements of attempted simple burglary beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence. The juvenile court was not clearly in error in adjudicating the child a delinquent and finding him guilty of attempted simple burglary. The circumstantial evidence in this case excluded every reasonable hypothesis of innocence. The only reasonable hypothesis for why the juvenile was pulling on car door handles late at night while wearing a hooded sweatshirt with the hood covering his head in the heat of summer is that he was attempting to enter vehicles without being identified. Further, when the juvenile realized he had been discovered, he quickly fled. The juvenile's flight and attempt to avoid apprehension are circumstances from which the juvenile court could infer guilt. This evidence is bolstered by the juvenile's suspicious behavior of walking "really slow" and "a little aimlessly" and looking over fences just prior to attempting to enter the vehicles. The only reasonable hypothesis from the evidence is that the juvenile intended to commit a theft or felony after gaining entrance to the vehicles. The juvenile court found that the juvenile's intention was to commit a theft or felony and the evidence excluded

7

any other reasonable hypothesis. Moreover, based on the totality of the circumstances, the juvenile's pulling on car door handles was an overt act tending toward committing a theft or felony in the vehicles at issue. See **State in Interest of Nelson**, 533 So.2d 91, 92 (La. App. 4th Cir. 1988) (scraping fresh putty from a window was an overt act sufficient to prove that the attempt to enter a house was made with the specific intent to commit a felony or any theft therein); see also **State v. Frosch**, 2001-1033 (La. 3/22/02), 816 So.2d 269, 270 (per curiam) (probable cause to arrest for attempted simple burglary established by "the defendant's jiggling of the truck's door handle at a late hour in a neighborhood where cars had been stolen in the past, combined with the defendant's subsequent flight from police.").

This assignment of error is without merit.

## MOTION TO SUPPRESS

In assignment of error number two, the juvenile contends the juvenile court erred in denying the motion to suppress his identification. He argues the show-up identification by Fagan should not have been used to establish identity beyond a reasonable doubt because it was suggestive, prejudicial, and very likely to result in irreparable misidentification.

An identification procedure is suggestive if it unduly focuses a witness' attention on the suspect. **State v. Earl**, 2014-1534 (La App. 1st Cir. 4/24/15), 2015 WL 1893190, *7, writ denied, 2015-1042 (La. 4/22/16), 191 So.3d 1044. In **Manson v. Brathwaite**, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court allowed evidence of a suggestive pretrial identification from a single photograph by an undercover police agent after determining that it was reliable. In that decision, the court concluded that "reliability is the linchpin in determining the admissibility of identification testimony[.]" **Earl**, 2015 WL 1893190 at *7 (quoting **Brathwaite**, 432 U.S. at 114, 97 S.Ct. at 2253).

Thus, a defendant attempting to suppress an identification must prove the identification was suggestive and that there was a substantial likelihood of misidentification by the eyewitness. Even should the identification be considered suggestive, that alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. If the identification procedure is determined to be suggestive, courts look to several factors to determine, from the totality of the circumstances, if the suggestive identification presents a substantial likelihood of misidentification. These factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. A trial court's determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. **Earl**, 2015 WL 1893190 at *8.

One-on-one confrontations between a suspect and victim are not favored by the law, but they are permissible when justified by the overall circumstances. This procedure is generally permitted when the accused is apprehended within a short time after the commission of the offense and is returned to the crime scene for an on-the-spot identification. Such a prompt in-the-field identification, under appropriate circumstances, promotes accuracy and expedites the release of innocent suspects. **Id.**

At the adjudication hearing, the juvenile argued Fagan viewed the individuals apprehended by the police, *i.e.*, the juvenile and his friend, at night and after he had stated he had not seen their faces. The juvenile argued the fact that Fagan did not see the faces of the suspects demonstrated his lack of attention. In regard to the accuracy of the prior description, the juvenile argued Fagan's "all black" clothing description

9

was inaccurate for failing to mention white lettering on the hooded sweatshirt and the fact that the pants were khaki.

On appeal, in regard to the opportunity of the witness to view the criminal at the time of the crime, the juvenile again points out Fagan did not see the faces of the suspects and the incident occurred at night. The juvenile also notes Fagan followed the suspects "from a distance." In regard to the witness' degree of attention, the juvenile concedes Fagan was paying attention as he followed the suspects, but relies on the fact that Fagan was unable to discern any facial features because of distance and darkness. In regard to the accuracy of the witness' prior description of the suspects, the juvenile again relies upon Fagan's failure to mention white lettering on the hooded sweatshirt and the fact that the pants were khaki as opposed to the "all black" clothing description given to officers. In regard to the level of certainty demonstrated at the confrontation, the juvenile concedes that Fagan was certain in his identification, but argues Fagan only briefly glimpsed the individuals apprehended by the police as the police unit drove by them while they were flanked by police officers and spotlighted. In regard to the time between the crime and the confrontation, the juvenile argues there was possibly over an hour delay between Fagan's viewing of the individuals apprehended by the police and the show-up identification. Additionally, the juvenile argues "[e]yewitness identifications have been found to be notoriously unreliable and have resulted in a number of convictions being set aside." Lastly, he argues the legislature enacted La. C.Cr.P. art. 253 to set standards and procedures for conducting physical and photographic lineups, but no procedures are listed for show-up identifications.

We find no abuse of discretion in the juvenile court's determination that Fagan's identification of the juvenile on the day of the incident was admissible at the adjudication hearing. Based upon the totality of the circumstances, even if the identification was suggestive, it did not present a substantial likelihood of

10

misidentification. Although Fagan was unable to view the faces of the suspects and even considering the fact that the incident occurred after dark, Fagan had an extended opportunity to view the suspects as he followed them long enough to see them pulling on the car door handles of multiple vehicles. Further, due to Fagan's experience in operating a security company, he watched the suspects with a high degree of attention, noting details concerning their clothing, height, mannerisms, and body language. While Fagan's initial description of the clothing worn by the suspects may not have included details concerning white lettering on one of the hooded sweat shirts, he was able to provide the most important identifying factor, *i.e.*, the suspects were wearing hooded sweatshirts in the heat of summer. Additionally, Fagan had "no doubt" in his identification. Finally, the time between the crime and the confrontation was minimal.

This assignment of error is without merit.

**ADJUDICATIONS AND DISPOSITIONS AFFIRMED.**