**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2023 KA 1317**

STATE OF LOUISIANA

VERSUS

JUSTIN LEE GRIFFIN

Judgment Rendered: **SEP 2 6 2024**

\* \* \* \* \* \*

On Appeal from the Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 801835

Honorable Juan W. Pickett, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Joseph L. Waitz, Jr.<br>District Attorney<br>-and-<br>Joseph S. Soignet<br>Special Prosecutor<br>-and-<br>Herbert "Bud" Barnes<br>Assistant District Attorney<br>Houma, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Counsel for Defendant/Appellant<br>Justin Lee Griffin |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, WELCH, AND LANIER, JJ.**

**McCLENDON, J.**

The defendant, Justin Lee Griffin, was charged by grand jury indictment with one count of first degree rape of a person under the age of thirteen (Count 1), a violation of LSA-R.S. 14:42(A)(4), and one count of cruelty to juveniles (Count 2), a violation of LSA-R.S. 14:93(A)(1). The defendant pled not guilty. Following a trial by jury, he was found guilty of the responsive verdict of attempted first degree rape as to Count 1 and guilty as charged of cruelty to juveniles as to Count 2. The trial court sentenced the defendant to thirty years at hard labor, without benefit of parole, probation, or suspension of sentence on Count 1, and six years at hard labor on Count 2, to run concurrently. Defendant now appeals, assigning error to the sufficiency of the evidence against him. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

On August 22, 2019, twelve-year-old T.G.,[1] the victim, was caught stealing food out of the teacher's lounge of Lacache Middle School. While speaking to the school counselor, Robin Sasser, about this incident, T.G. disclosed that she was having trouble at home and that her father, the defendant, forced her to sleep outside in a tent and touched her inappropriately. Sasser reported this information to the Terrebonne Parish Sheriff's Office and to the Department of Children and Family Services. Following an investigation into the matter, the defendant was charged with first degree rape of T.G. and cruelty to juveniles.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, the defendant contends there was insufficient evidence to convict him of attempted first degree rape and cruelty to juveniles. He argues the State "merely presented conjecture under which no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the

---

[1] Herein, we reference the victim only by her initials. See LSA-R.S. 46:1844(W).

2

evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Mellion**, 2021-1116 (La.App. 1 Cir. 4/8/22), 342 So.3d 41, 45, writ denied, 2022-00732 (La. 6/22/22), 339 So.3d 1186, cert. denied, ___ U.S. ___, 143 S.Ct. 319, 214 L.Ed.2d 141 (2022).

When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder, in order to convict, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Dyson**, 2016-1571 (La.App. 1 Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. **State v. Livous**, 2018-0016 (La.App. 1 Cir. 9/24/18), 259 So.3d 1036, 1040, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130. Rather, appellate review is limited to determining whether the facts established by the direct evidence, and inferred from the circumstances established by that evidence, are sufficient for any rational trier of fact to conclude beyond a reasonable doubt the defendant was guilty of every essential element of the crime. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. **Id.**

Rape is the act of anal, oral, or vaginal sexual intercourse committed without the person's lawful consent. LSA-R.S. 14:41(A). Any sexual penetration, however slight, is sufficient to complete the crime. See LSA-R.S. 14:41(B). First degree rape is a rape committed where the sexual intercourse is deemed to be without lawful consent of the victim because the victim is under the age of thirteen years. LSA-R.S. 14:42(A)(4). Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an

3

attempt to commit the offense intended. It shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. LSA-R.S. 14:27(A).

The record establishes that T.G. was under the age of thirteen at the time of the events at issue. Herein, the defendant was found guilty of attempted first degree rape, which requires proof of the defendant's specific intent to commit anal, oral, or vaginal sexual intercourse with a person under the age of thirteen years, where the offender does an act for the purposes of and tending directly toward accomplishing one or more of those acts of intercourse. See **State v. Cousin**, 2022-1025 (La.App. 1 Cir. 6/15/23), 2023 WL 4013394, *3 (unpublished), writ denied, 2023-00988 (La. 1/17/24), 377 So.3d 245; see also La. R.S. 14:27; La. R.S. 14:42(A)(4). Cruelty to juveniles involves the intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen, whereby unjustifiable pain or suffering is caused to the child. La. R.S. 14:93(A)(1). After a thorough review of the record, we find a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty of attempted first degree rape and cruelty to juveniles.

Robin Sasser, the school counselor for Lacache Middle School, testified T.G. was one of the most well-behaved students on campus. However, after T.G. was caught stealing food out of the teacher's lounge, Sasser sat down with her to discuss the incident. During the conversation, T.G. disclosed problems at home, describing a period of time when the defendant, her father, made her sleep under a tarp in the backyard and go to the bathroom in a bucket outside. T.G. also disclosed that the defendant touched her inappropriately, tried to make her touch him, and told her no one would believe her if she recounted the touching. As a mandatory reporter, Sasser testified she immediately disclosed this information to the Terrebonne Parish Sheriff's Office and to the Department of Children and Family Services.

T.G., who was sixteen years old at the time of trial, testified her date of birth was December 14, 2006 and she was currently living in foster care. T.G. confirmed that after disclosing she was touched in a sexual manner, she gave a statement to the Children's Advocacy Center (CAC). A video of T.G.'s CAC statement was played for the

4

jury, wherein T.G. described how she was made to sleep outside for a week the previous May after the defendant accused her of denting his trailer. She explained she was given tarps, zip ties, and rope with which to build a shelter, and had to go to the bathroom in a bucket. She stated the backyard was on the bayou, and she would throw her waste from the bucket into the bayou. She further explained she was given one blanket and no pillow, and had to sleep on the ground. The defendant had a surveillance camera on T.G. while she stayed outside. She stated because it was May and it was hot outside, the bugs were the worst part. However, because of the video surveillance camera, the defendant would know if she tried to sleep in the nearby shed.

During her CAC statement, T.G. explained that one night, while she was sleeping outside underneath the tarp, the defendant brought her into the shed where there was a rope hanging from a pulley system. The rope had a noose at one end, and T.G. described how the defendant wrapped the noose in what she described as a pool noodle, put the noose wrapped in the pool noodle around her neck, and pulled her up a little bit at a time. She said her feet dangled in the air until she was able to swing them onto the wrung of a nearby ladder. T.G. explained that her understanding of the purpose of the pool noodle was to provide a cushion, so she would not choke completely. She described the sensation of choking, saying it felt like breathing through a straw. T.G. further stated that after the defendant lowered her back to the floor, he pulled down her shorts and attempted to insert his penis into her anus, while the noose was still around her neck. She explained while his penis did not "go all the way in," it did hurt. She stated that several months prior, the defendant came into her room while she was in bed and had her watch something while he touched her vagina. T.G. described multiple incidents wherein the defendant tried to vaginally and anally penetrate her, but did not completely insert his penis. She also stated the defendant performed oral sex on her and tried to get her to perform oral sex on him.

At trial, T.G. testified she eventually went into foster care following the defendant's arrest. She began keeping a journal in early 2020, wherein she described multiple instances of sexual abuse by the defendant. T.G. testified as to these journal entries, which detailed incidents of vaginal and anal rape. On cross-examination, T.G.

5

acknowledged that she did not disclose the full extent of the defendant's sexual abuse as set forth in her journal.

Detective Lauren Robichaux with the Terrebonne Parish Sheriff's Office was the primary detective assigned to this case. Detective Robichaux testified that after T.G.'s CAC interview, she obtained a warrant to search the defendant's property. Inside of the shed, Detective Robichaux found a rope hanging from a pulley system, as well as a piece of pipe insulation she believed T.G. likely confused for a pool noodle. Detective Robichaux further described creases on the insulation, "as if it had been bent, and put in something that small before[,]" and stated that she checked that the pipe insulation "fit the loop[.]"

Dr. Judith Dodd was qualified by the trial court as an expert in the field of child abuse pediatrics. She testified she conducted T.G.'s medical exam, and T.G.'s exam was completely normal. She further testified a normal exam is consistent with the history of sexual abuse T.G. described, and she would not expect to see any physical evidence of sexual abuse in someone like T.G.'s situation. Rather, physical signs of sexual abuse are very rare, and usually are found only if the exam takes place within forty-eight hours of the abuse. Dr. Dodd further testified delayed disclosure of sexual abuse is normal, particularly where the alleged perpetrator is someone close to the victim, such as a parent or relative. She further testified disclosure of sexual abuse is often an ongoing process, and a child will not usually divulge everything that happened in one sitting. Rather, children will give more information over time, particularly once they feel safe in doing so. Finally, Dr. Dodd testified children tend to under-report or minimize the abuse they experience, rather than exaggerate the abuse.

The defendant did not testify at trial. However, T.G.'s cousin, Sarah Moser, testified for the defense. Moser testified that after T.G. made the allegations against the defendant, Moser called T.G. and asked her if these things really happened. Moser testified T.G. told her nothing happened, and T.G. only made the allegations because she wanted to live somewhere else, and because T.G. was angry the defendant had taken her phone away.

On appeal, the defendant contends that, "[c]onsidered through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational factfinder can, the jury in this matter could not have found T.G. credible." The defendant argues T.G. is not credible because T.G.'s testimony at trial regarding the abuse that occurred differed from her initial CAC statement. We disagree.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. **State v. Mangrum**, 2020-0243 (La.App. 1 Cir. 2/22/21), 321 So.3d 986, 992, writ denied, 2021-00401 (La. 10/1/21), 324 So.3d 1050. Further, if believed, the testimony of the victim alone, with no other evidence, is sufficient to prove the elements of the offense. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. See **Id**.

*Cruelty to Juveniles*

With regard to cruelty to juveniles, the State was required to prove the defendant engaged in intentional or criminally negligent mistreatment or neglect of any child under the age of seventeen, whereby unjustifiable pain or suffering is caused to the child. See LSA-R.S. 14:93(A)(1). Herein, the State presented uncontroverted evidence T.G. was forced to sleep outside on the ground, underneath a tarp in the heat of May, with a bucket for a bathroom. Any rational trier-of-fact, viewing the evidence in the light most favorable to the State, could have concluded beyond a reasonable doubt that, in doing so, the defendant acted with the specific intent to mistreat or abuse T.G. to an extent sufficient to result in unreasonable pain and suffering.

While the defendant argues the State failed to prove this punishment caused T.G. unjustifiable pain and suffering, and that this was merely an "unorthodox" punishment, the jury clearly and rationally rejected this hypothesis of innocence. See **State v. Mortenson**, 2022-1047 (La. App. 1st Cir. 4/26/23), 2023 WL 3085363, *4 (unpublished). In May of 2019, the defendant forced T.G. to remain outside, sleeping on the ground, for multiple days. According to T.G.'s CAC statement, the defendant

7

monitored her via surveillance camera to make sure she did not sleep in the shed during this time. She was further forced to urinate and defecate into a bucket, was denied access to regular showers, and food was brought outside to her once or twice a day. T.G. clarified that she did not sleep in a tent, which would have provided some measure of protection from the elements, including rain, heat, or insects. Rather, she constructed a makeshift shelter out of tarps and boxes and slept directly on the ground. Moreover, as this punishment was one of the first issues T.G. discussed with her school counselor, as well as the forensic interviewer, one could conclude that the episode, which occurred months prior to the disclosure, caused T.G. unjustifiable pain and suffering.

Finally, T.G.'s allegation the defendant hung her from a rope in the shed was supported by Detective Robichaux's search of the defendant's property, wherein officers located the precise rope and pulley system T.G. described, and recovered a piece of pipe insulation nearby cut to fit the noose. The defendant's conduct evidenced his intentional mistreatment of T.G. to an extent which caused unjustifiable pain and suffering, and supported the verdict returned by the jury.

*Attempted First Degree Rape*

With respect to the charge of attempted first degree rape, the defendant contends that because T.G. never told the forensic investigator she was raped, only that she was sexually abused by improper touching, no rational juror could have found T.G. credible. The defendant argues T.G.'s "testimony changed from a forensic interview to court, she admitted to exaggeration, and the defense presented a witness who testified that T.G. told her none of the alleged sexual acts occurred."

At the outset we note that in her CAC interview, T.G. described partial vaginal and anal penetration, as well as oral sex perpetrated by the defendant. Thus, the defendant's assertion T.G. did not allege she was raped until she testified at trial is patently false. During her CAC interview, T.G. described an incident of oral sexual intercourse wherein the defendant put his mouth on her "stuff" and licked her private area. This statement, by itself, is sufficient evidence the defendant committed the crime of first degree rape against T.G.

8

Moreover, T.G. stated in her interview that during the incident in the shed, the defendant's penis entered her anus "a little bit" and that it hurt. She also described another incident where the defendant forced her legs open and tried to put his penis in her vagina. Any sexual penetration, however slight, is sufficient to complete the crime. See LSA-R.S. 14:41(B). While T.G. acknowledged she did not disclose the full extent of the defendant's vaginal and anal rape during her CAC interview, she did describe partial vaginal and anal penetration, as well as oral sexual intercourse. T.G. also testified in detail at trial as to each of those incidents. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Lavy**, 2013-1025 (La. App. 1st Cir. 3/11/14), 142 So.3d 1000, 1006, writ denied, 2014-0644 (La. 10/31/14), 152 So.3d 150.

The verdict rendered in this case indicates the jury rejected the defendant's theory that T.G. lacked credibility, and further rejected Moser's testimony that T.G. admitted to fabricating the allegations against the defendant. In reviewing the evidence presented at trial, we cannot say the jury's determination was irrational under the facts and circumstances presented. The State offered uncontroverted evidence from Dr. Dodd to explain both the lack of physical evidence of sexual abuse, and why victims of sexual abuse are reluctant to disclose the full extent of the abuse that occurred. Dr. Dodd explained it was typical for the victim of sexual abuse to have a normal physical exam, particularly where the abuse occurred more than forty-eight hours prior to the exam. Dr. Dodd also explained that victims of sexual abuse often will not share the entire extent of their abuse in the first sitting, and as the victim begins to feel safe, she will often divulge more and more information. This is precisely what occurred in this case; wherein T.G. entered into a supportive foster care environment and was gradually able to disclose more information regarding the defendant's abuse.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). After reviewing the evidence in its entirety, we cannot say the jury's

9

determination was irrational under the facts and circumstances presented to them. <u>See</u> **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. Viewed in the light most favorable to the State, a rational trier of fact could have found the State proved all elements of cruelty to juveniles and attempted first degree rape beyond a reasonable doubt. Accordingly, the defendant's sole assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**